PD-0664-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 8/10/2015 4:51:51 PM
Accepted 8/11/2015 4:22:30 PM
ABEL ACOSTA
CLERK

NO.: **PD-0664-15**

| | | |
|---|---|---|
| **STEPHANIE ANN SCHENK,** **RESPONDENT/APPELLANT** | § | **IN THE COURT OF** |
| **vs.** | § | **CRIMINAL APPEALS** |
| **THE STATE OF TEXAS,** **PETITIONER/APPELLEE** | § | **AT AUSTIN, TEXAS** |

## PETITIONER/APPELLANT'S MOTION FOR REHEARING

Petitioner/Appellant Stephanie Ann Schenk respectfully moves the Court of Criminal Appeals to reconsider its decision to not to grant review of the Court of Appeals' July 29, 2015 opinion and judgment upholding the denial of Petitioner's motion in to suppress the above captioned appeal. Petitioner requests a rehearing because the Fifth Court of Appeals has decided an important question of state law in a way that conflicts with the applicable decision of the United States Supreme Court and misinterpreted the rules of statutory construction. Specifically, given the language of Supreme Court's opinion, it appears that the Court of Appeals used the incorrect legal standard for determining if the stop went on too long. *Rodriguez v. United States*, 135 S.Ct. 1609 (April 21, 2015). This brief is submitted in accordance with T.R.A.P. 79.2(c) in that the grounds for review are based on substantial intervening circumstances or other significant circumstances which are based on this Court's decision in *State v. Baker*, No. PD-1592-13 (Oct. 15, 2014). In *Baker*, this Court initially granted review for the State; however, after

reanalyzing the record and briefs, this Court reversed themselves. In light of this Court's ability to reexamine the record and briefs, such examination would be appropriate in this case and have this Court grant the petition for discretionary review. In addition, a motion for rehearing can be amended under T.R.A.P. 79.3 at any time before the court hears the motion. Petitioner requests reconsideration on the points raised and the prior Petitioner/Appellant's Brief these points are as follows:

1. The State erred in their Opinion that in that they did not apply the new United States Supreme Court case of *Rodriguez v. United States* to the facts of this case. 135 S.Ct. 1609, 191 L.Ed.2d 492, 2015 U.S. LEXIS 2807, 500 (No. 13-99720 April 21, 2015). In the Supreme Court's Opinion it states that a "seven or eight minute delay" was unreasonable in a traffic stop and remanded the case to the Eighth Circuirt for further consideration. Id. at 497, 501. The Court determined that the critical question was not whether the dog sniff occurred before or after the ticket was written, but whether conducting the sniff "prolongs" or adds time to the "stop". *Id.* at 501. Therefore, in Petitioner's case the detention was unreasonably delayed and the evidence should have been suppressed. "Authority for the seizure thus ends when the tasks tied to the traffic infraction are—or reasonably should have been completed." *Id.* at 498.

The Rodriguez case should be considered in deciding Petitioner's case because her case is still on appeal.

Under this new law, an officer cannot delay writing a ticket to extend the detention. The Court of Appeals suggests that the detention was not over because the officer had not issued a warning ticket. The new law makes this determination irrelevant, and when the computerized check came back negative, Petitioner and the other occupants of the vehicle should have been free to leave and allowed to drive away. Extending the detention further was an unreasonable seizure under the 4th amendment of the Constitution; therefore was a constitutional error which could be raised on appeal and was not waived at the trial court level.

2. In order to avoid waiving the issue on appeal, Petitioner would restate that the Appellate Court in their Opinion on Page 6 misinterpreted *State v. Ortiz,* 382 S.W.3d 367 (Tex. Crim. App. 2012), by believing that Miranda does not apply in this case; therefore the officer did not need to give Petitioner her Miranda warnings before he questioned her. *Ortiz* sets out the standard to be used to determine if someone is under arrest and in custody for Miranda purposes. In making a custody determination, the primary question is whether a reasonable person would have perceived the detention to be a restraint on his/her movement

3

"comparable to…formal arrest," given all the objective circumstances. *Id.* at 372.

3. In order to avoid waiving the issue on appeal, Petitioner would restate that the Court of Appeals should not have relied on *Wyoming v. Houghton*, 526 U.S. 295 (1999), but instead have relieved on *State v. Rascebaum*, No. 08-03-00182-CR, 2005 Tex. App. LEXIS 4192, *12 (Tex. App. – El Paso May 31, 2005). In that case, the driver had a white powdery substance on his lip that could have been cocaine. However, because the officers failed to test the substance it failed to raise to the level of probable cause to allow the police to search the passenger's purse. In this case, the officer found an alleged marijuana pipe but did not test it to determine what the substance was. Therefore, Petitioner did need to freely and voluntarily consent to the search of her purse.

4. Finally, in order to avoid waiving the issue on appeal, Petitioner would restate that the Court of Appeals in stating that *State v. Cullen* does not apply in this case. *Cullen* states that: upon request of the losing party on a motion to suppress, the trial court shall state its essential findings. By "essential findings", we mean that the trial court must make findings of fact and conclusions of law adequate to provide an appellate court with a basis upon which to review the trial court's application of the law to the facts. 195 S.W. 3d 696, 699 (Tex. Crim. App. 2006). In this case, the

4

Trial Court was incorrect because its findings of fact are not based in the record. A Trial Court can not just make up fact out of thin air to support his application of the law.

Given the arguments presented above it is clear that based on the necessity that the Court of Criminal Appeals reverse the Court of Appeals and continue to follow both the *Rodriquez* and *Cullen*. The Court of Criminal Appeals should reverse the Trial Court's ruling and/ or remand the case back to the Court of Appeals for further procedures.

**RESPECTFULLY SUBMITTED,**

**ATTORNEY FOR DEFENDANT**
**JERRY D. KELLY**
**BAR CARD #11221500**
**4131 N. Central EXPWY Suite 110**
**DALLAS, TEXAS 75204**
**214-522-7700 PHONE**
**214-522-7704 FAX**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Petitioner/Appellant's Motion for Rehearing was served by the EFILE.TXCOURTS.gov system to the Assistant District Attorney, the State Prosecuting Attorney and the Original filed to the Court of Criminal Appeals on this the _____10th_____ day of _____AUGUST_____ 2015.

BY: _____
Jerry D. Kelly
STATE BAR NO: 11221500

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limitations in Texas Rule of Appellate Procedure 9.4(i)(2). In reliance on the word count of the computer program used to prepare this brief, the undersigned attorney certifies that this brief contains 985 words, exclusive of the sections of the brief exempted by Rule 9.4(i)(l).

BY: _____
Jerry D. Kelly
STATE BAR NO: 11221500

## CERTIFICATION

I hereby certify that a copy of the above and foregoing Petitioner/Appellant's Motion for Rehearing is based on other significant circumstances which are specified in the motion and that the motion is made in good faith and not for delay.

BY: _____
Jerry D. Kelly
STATE BAR NO: 11221500

6

Affirmed and Opinion Filed March 16, 2015



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-14-00207-CR

**STEPHANIE ANN SCHENK, Appellant**

V.

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 380th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 380-82013-2012**

# MEMORANDUM OPINION

Before Justices Bridges, Lang-Miers, and Myers
Opinion by Justice Bridges

The State indicted appellant Stephanie Ann Schenk for intentionally and knowingly possessing a controlled substance, namely, methamphetamine, in an amount of less than one gram. She moved to suppress the evidence, but the trial court denied the motion. Schenk then pleaded guilty and was placed on one-year deferred adjudication community supervision.

In four issues, Schenk challenges: (1) whether the officer's failure to give *Miranda* warnings before searching for and finding drugs invalidated the search; (2) whether the officer exceeded the scope of the original traffic stop; (3) whether Schenk's consent to search was clear and unequivocal and freely and voluntarily given; and (4) whether the trial court's findings of fact and conclusions of law satisfied the standard required under *Cullen v. State*, 195 S.W.3d 696 (Tex. Crim. App. 2006). We affirm the trial court's judgment.

## Background

Officer Michael White, a twelve-year veteran with the Plano Police Department, testified at the suppression hearing. The State also admitted into evidence the dash cam video from the stop. Officer White's testimony and the video show the following facts.

Around 11:38 p.m. on March 7, 2012, a light blue Ford Taurus caught Officer White's attention. The vehicle failed to stop at a designated point and then made a wide right turn, both of which are traffic code violations. Officer White commented on the video, "They are definitely over the line." He then initiated a traffic stop.

Officer White informed the driver he was stopped for failure to stop at a designated point and wide right turn. Office White asked the driver, later identified as Richard Betrand, for his license. Officer White asked Bertrand why he knew him, and Bertrand responded, "Maybe because I did four days for serving out a ticket warrant a couple months ago. I don't know." At the hearing, Officer White testified he recognized Bertrand's name because of previous drug-related interactions.[1]

Officer White called for a back up officer, who arrived approximately six minutes later, and then asked Bertrand to step out of the vehicle. Bertrand voluntarily removed a knife from his pocket and left it on the car seat. Officer White conducted a *Terry* frisk and did not find any other contraband. Bertrand then sat on the curb by the car.

Two other occupants were also inside the car. Bradley Chaudoir, the owner of the car, was seated in the backseat on the passenger side. Chaudoir was not driving at the time because his driver's license had expired, and he admitted to taking vodka shots earlier in the evening. Schenk was in the passenger seat. Officer White received consent to search both of them and did

---

[1] In 2011, Officer White conducted a "trash run" at Bertrand's location, and he was issued citation for possession of drug paraphernalia. Prior to that, Officer White had been advised Bertrand was using and possibly selling narcotics from his residence. Officer White recalled five prior narcotics calls involving Bertrand.

not find any additional contraband. Officer White called dispatch to run their drivers' licenses for any prior criminal history.

When all three were sitting on the curb, Officer White asked what they were doing out, when was the last time they smoked weed in the car, and whether they used methamphetamine or heroin. They denied recently smoking marijuana in the car and denied using methamphetamine or heroin. Officer White confirmed their denial by asking to see their arms. Officer White also asked each passenger when they were last arrested and each person told him about a prior arrest.

Officer White then separated Chaudoir from the others and talked with him. Officer White told Schenk and Bertrand not to take off running because the back up officer was pretty fast. The video shows Schenk smiled and appeared to laugh at the remark. It also shows her smiling and talking with the back up officer while Officer White talked to Chaudoir.[2] Bertrand is also seen laughing on occasion.

Chaudoir told Officer White there was nothing illegal in the car and gave permission to search. Behind the front right passenger seat in "the little pocket," Officer White found a marijuana pipe with marijuana residue inside. Chaudoir first claimed it was not in his car prior to that night, but he eventually admitted ownership of the pipe.

After finding the marijuana pipe in the back seat, Officer White asked Schenk if she had any pipes or drugs in her purse, which was sitting in the front passenger seat. She first said no and then said she did have something, but she did not know what it was. She claimed to have gotten it from her sister's house, and she later changed her story to say it came from her mother's house. This information and change in her story "piqu[ed]" Officer White's interest.

---

[2] The dash cam audio is wired to Officer White so we do not know the details of the conversation between the back up officer and Bertrand and Schenk.

Officer White asked, "Do you mind if I get it?" She said, "I don't care." During the search of Schenk's purse, Officer White found a make up type bag that contained a clear plastic baggie with a crystal-like substance inside, Q-tips, and a lighter. He also found a white pill, which she claimed was a dietary supplement. Based on his experience, Officer White knew women who used drugs such as methamphetamine or heroin often took dietary supplements to combat the ill-effects from the drugs. In fact, Officer White said a comparison of Schenk's license photo and her present physical appearance (physical depletion, bags under her eyes) indicated she was a drug user. Officer White conducted a field test on the crystal-like substance found in the baggie in her purse, and it tested positive for a usable amount of methamphetamine.

At this point, Officer White did not handcuff Schenk, but rather questioned her about the drugs. She admitted ownership. Officer White arrested Schenk and issued Chaudoir a Class C citation for possession of drug paraphernalia. Bertrand and Chaudoir were then free to go.

Bertrand also testified at the suppression hearing. Bertrand said his car and the police car were the only vehicles on the road as far as he could see in either direction at the time of the stop. He claimed he stopped behind the line at the red light and then edged forward to see around a large brick wall to make sure it was clear to turn right. Knowing an officer was behind him, he "made every effort to make an absolute perfect legal stop." Because he lived on the street that was the next immediate left, he did not turn directly into the right lane. Rather, he made a wide right turn into the center lane, which he felt was safe and practical because no other cars were present. He testified Officer White pulled him over because he made a wide right turn and there was a lot of criminal activity in the area.[3] When asked if he felt like he and the others were free to leave, he said, "Absolutely not. He exercised his legal authority like the second he came back with my driver's license."

_____

[3] In the dash cam video, Officer White did not tell Bertrand he made the stop because of criminal activity.

-4-

The trial court denied Schenk's motion to suppress and issued findings of fact and conclusions of law. This appeal followed.

**Violation of *Miranda***

In her first issue, Schenk argues the trial court erred by failing to conclude she was not in custody for purposes of *Miranda* when she gave incriminating statements to Officer White and allowed him to search her purse. The State responds Schenk's unwarned statements were admissible because she was not in custody.

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We review the trial court's factual findings for an abuse of discretion, but review the trial court's application of the law to the facts de novo. *Id.* We give almost total deference to the trial court's determination of historical facts, particularly when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Id.*; *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We give the same deference to the trial court's conclusions with respect to mixed questions of law and fact that turn on credibility or demeanor. *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012). We review mixed questions of law and fact that do not turn on credibility and demeanor as well as purely legal questions de novo. *State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011). As a general rule, we view the evidence in the light most favorable to the trial court's ruling and afford the prevailing party the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. *State v. Duran*, 396 S.W.3d 563, 571 (Tex. Crim. App. 2013).

Generally, a routine traffic stop does not place a person in custody for *Miranda* purposes. *Ortiz*, 382 S.W.3d at 373. However, a routine traffic stop may escalate into a custodial detention when formal arrest ensues or a detainee's freedom of movement is restrained "to the degree

associated with a formal arrest." *Id.* We evaluate whether a person has been detained to the degree associated with a formal arrest on a case-by-case basis. *Id.* The primary question in making a custody determination is whether a reasonable person would perceive the detention to be a restraint on her movement comparable to a formal arrest given all the objective circumstances. *Id.* The subjective beliefs of the detaining officer are not included in the calculation of whether a suspect is in custody. *Id.* at 373. However, if the officer manifests his belief to the detainee that she is a suspect, then the officer's subjective belief becomes relevant to the custody determination. *Id.*

Schenk first argues it was inappropriate for Officer White to remove her from the car when she had not engaged in any illegal activity in front of him. However, an officer may ask not only the driver, but also passengers to step out of a car. *Maryland v. Wilson*, 519 U.S. 408, 410 (1997) (noting the additional intrusion of ordering passengers out of a vehicle is minimal given the possible greater danger to an officer when passengers are present).

She also complains Officer White "almost immediately" began questioning the occupants about drug use. Although an officer's expressed suspicion that a person has drugs in her possession can indicate a routine traffic stop has escalated to a custodial detention, such is not always the case.

For example, in *State v. Ortiz*, 382 S.W.3d 367, 374 (Tex. Crim. App. 2012), an officer discovered drugs on the passenger during a routine traffic stop. The officer accused the driver of having drugs by asking, "How much drugs are in the car?" *Id.* at 373. The officer later asked, "What kind of drugs does she have?" which the court noted was the type of question that "by its very nature, conveyed to the appellee [the officer's] presupposition that he knew what kind of drugs the passenger possessed." *Id.* at 373. Thus, the officer's overt attitude concerning the

–6–

appellee's complicity was one factor in the court ultimately concluding the appellee was in custody at the time of questioning. *Id.*

However, in *Estrada v. State*, the Court of Criminal Appeals distinguished *Ortiz* and reached a different conclusion. *Estrada v. State*, No. PD-0106-13, 2014 WL 969221, at *3 (Tex. Crim. App. Mar. 12, 2014) (not designated for publication). In that case, an officer smelled burnt marijuana emanating from the vehicle during a routine traffic stop. *Id.* at *1. The officer ordered the driver and passenger out of the vehicle, and during a search of the vehicle, he found marijuana and other drug paraphernalia inside a make up bag. *Id.* The officer then asked both occupants who the drugs belonged to. *Id.* Estrada confessed they were hers, and she was arrested. *Id.* Estrada filed a motion to suppress arguing the officer's question was similar to *Ortiz*, and therefore, she was in custody when she provided an incriminating statement without receiving *Miranda* warnings. *Id.* The court acknowledged that a reasonable person in her position would have recognized the officer suspected her of possessing the drugs, but any communicated suspicion did not "approach the overtly communicated suspicion present in *Ortiz*." *Id.* at *3. Unlike the officer in *Ortiz*, the officer did not point blank ask only Estrada if the drugs were hers, but rather directed his question at both occupants. This general inquiry was neither as coercive and accusatory as the direct questions to the appellee by the officer in *Ortiz*, nor was the inquiry made while the two occupants were physically separated, as in *Ortiz*. *Id.* The court concluded the officer's general attempt to gather information and general expression of suspicion towards both passengers did not provide "substantial support" that a reasonable person in Estrada's position would have believed she was in custody when she confessed to ownership of the drugs. *Id.*

The present facts are similar to *Estrada*. After getting the driver's and passengers' names, dates of birth, and previous arrest information, Officer White asked, "When was the last

time you guys smoked weed in the car?" Chaudoir responded it had been awhile, Bertrand said he did not smoke weed, and Schenk's response is not audible on the video. This question, as well as a follow up question regarding whether they used methamphetamine or heroin, was directed to all three individuals. The question was not specifically directed towards Schenk or asked while she was separated from the others. Like *Estrada*, Officer White's attempt to gather information and any expression of his suspicion about their possible drug activity or drug possession would not lead a reasonable person in Schenk's position to believe she was in custody.

Schenk next argues the arrival of a second officer, and Officer White saying, "Don't take off running, [the back up officer] is pretty quick," indicated they were not free to leave, and the stop had escalated into "something inherently more coercive." First, after Office White made the statement about not running off, the video shows Schenk smiling and shaking her head, which indicates she did not take the comment as a restraint on her freedom to leave. Further, later in the video Chaudoir is seen freely moving between sitting on the curb and leaning against a police car indicating the situation was not coercive to the point they felt they had to stay in one place. No one was handcuffed, ordered to stay in one place, or being intimidated by an officer with a drawn weapon, which would indicate a custodial situation. Second, in *Ortiz*, the court noted "[a]n ordinary traffic stop usually involves a single police car and one or two officers." 382 S.W.3d at 372. In that case, the appellee was faced with at least two police cars and three officers at the time he made an incriminating statement. *Id*. The court concluded that "while it was hardly an overwhelming show of force," the show of force added "at least marginally" to the court's conclusion he was in custody for *Miranda* purposes at the time he made the incriminating statement. *Id*. Here, the occupants still outnumbered the officers present. Thus, the occupants were subjected to even less of a showing of force than the *Ortiz* court found to be "hardly

overwhelming." Accordingly, we cannot conclude the arrival of a second officer would lead a reasonable person to believe she was not free to leave or that the situation had escalated to a custody situation.

Schenk also argues that Officer White "loudly and within hearing of Ms. Schenk" indicated his belief they were suspects in drug activity; therefore, Officer White's subjective belief is relevant to our custody determination. The record does not support Schenk's contention. On the video, Officer White pulls Chaudoir from the others and tells him people have been "running through here dealing drugs and breaking into cars and stuff like that. I'm not saying you guys are doing it but I want to make sure you're not." Officer White's statement indicates he did not specifically believe they were engaging in criminal activity. Further, there is nothing in the record indicating Schenk heard the exchange between Officer White and Chaudoir. Therefore, Officer White's statement did not manifest his belief to Schenk that she was a suspect, thereby making his subjective belief relevant to the custody determination. *Ortiz*, 382 S.W.3d at 373.

Finally, Schenk argues that when Officer White found the marijuana pipe in the car and asked her if she had anything like that in her purse, he continued to emphasize she was a suspect and the traffic stop was coercive. First, during an investigative detention, custody is not established simply because the suspect is not able to leave until the investigation is complete. *See Lee v. State*, No. 05-02-00508-CR, 2003 WL 21212822, at *8 (Tex. App.—Dallas May 27, 2003, pet. dism'd, untimely filed) (not designated for publication). Second, as will be further explained below, to the extent Schenk argues a *Miranda* violation invalidated the search of her purse, the search of her purse was justified without her consent. *See Wyoming v. Houghton*, 526 U.S. 295, 306–07 (1999) (holding when probable cause exists to search a vehicle, the search extends to all containers inside which may hold incriminating evidence, including a passenger's

−9−

purse). Thus, Schenk's argument does not impact whether she was in custody for purposes of *Miranda*.

Having considered Schenk's arguments, we conclude the trial court correctly determined a reasonable person would not perceive the detention to be a restraint on her movement comparable to a formal arrest given all the objective circumstances. *See Ortiz*, 382 S.W.3d at 373. Thus, the routine traffic stop did not escalate into a formal arrest in which Schenk provided incriminating information without proper *Miranda* warnings. We overrule her first issue.

### Scope of Traffic Stop

In her second issue, Schenk argues Officer White extended the traffic stop beyond the reasonable time to give a warning or a ticket. She contends once the warrant checks came back clear, she and the other occupants were free to leave, and extending the detention further was an unreasonable seizure under the Fourth Amendment. The State responds the issue is not preserved for our review, and even if it is preserved, Officer White did not impermissibly prolong the traffic stop.

A motion to suppress evidence is nothing more than a specialized objection to the admissibility of evidence. *See Black v. State*, 362 S.W.3d 626, 633 (Tex. Crim. App. 2012); *see also Flores v. State*, No. 05-91-01475-CR, 2000 WL 124666, at *8 (Tex. App.—Dallas Feb. 3, 2000, pet. ref'd) (not designated for publication). Thus, a motion must meet the requirements of an objection by being timely, proper, and specific. TEX. R. APP. P. 33.1; *Flores*, 2000 WL 124666, at *8. The failure to object waives any error, and generally, an appellant may not raise an issue which was not raised to the trial court or which varies from the objection made to the trial court. *Vafaiyan v. State*, 279 S.W.3d 374, 383 (Tex. App.—Fort Worth 2008, pet. ref'd) (concluding appellant failed to preserve error regarding alleged staleness of information in a search warrant when he failed to raise the issue in his motion to suppress).

–10–

Schenk did not argue in her motion to suppress or at the suppression hearing that the length of her detention provided an independent reason to suppress the methamphetamine. Rather, she argued reasonable suspicion for the stop, probable cause for the arrest, and violation of *Miranda*. Moreover, Schenk's only objection to the trial court's finding that "The detention of Bertrand, Schenk, and Chaudoir was reasonable and lawful" was "there was no *Miranda* warning prior to the search of the vehicle when the request for consent was made, the situation had already escalated to a drug investigation from a simple traffic stop." Because Schenk failed to raise her argument to the trial court regarding the alleged prolonged detention of the initial stop, she has waived her complaint. *Id.*; *see also* TEX. R. APP. P. 33.1. Schenk's second issue is overruled.

### Consent to Search

In her third issue, Schenk argues her consent to search her purse was not "clear and unequivocal as well as freely and voluntarily given." The State responds the issue is not preserved, consent was voluntarily given, and the search of her purse was justified without her consent.

The State first argues the issue is not preserved because the record indicates Schenk seemed to object to whether she gave consent to the search of her property "at all" and "not whether the consent was voluntary." While the record from the hearing is not precise on this issue, the trial court issued a finding of fact and conclusion of law that "Schenk knowingly and voluntarily consented to the retrieval of the item in her purse by Officer White." As such, we decline the State's invitation to waive her issue.

We agree, however, with the State's argument that Officer White did not need Schenk's consent prior to searching her purse; therefore, we need not consider whether her consent was "clear and unequivocal as well as freely and voluntarily given." In *Wyoming v. Houghton*, the

–11–

United States Supreme Court answered the question of whether police officers violate the Fourth Amendment when they search a passenger's personal belongings inside an automobile that they have probable cause to believe contains contraband. 526 U.S. at 297. That case specifically involved the search of a passenger's purse after an officer found drug paraphernalia on the driver, which provided probable cause to search the rest of the car. *Id*. at 298. Inside the purse, the officer found drug paraphernalia and charged the defendant accordingly. *Id*. at 295. The Supreme Court concluded, "When there is probable cause to search for contraband in a car, it is reasonable for police officers . . . to examine packages and containers without a showing of individualized probable cause for each one." *Id*. at 302. A passenger's belongings are "in" the car, and an officer has probable cause to search for contraband "in the car." *Id*.; *see also Huerta v. State*, No. 07-10-00049-CR, 2012 WL 280569, at *2 (Tex. App.—Amarillo Jan. 31, 2012, no pet.) (mem. op) (not designated for publication) (concluding search of passenger's purse was proper after driver gave consent to search vehicle and officer found crack pipe inside vehicle).

Similar to the facts in *Houghton*, Officer White found a pipe with marijuana residue, which provided him with probable cause to continue his search of the car. *See Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007) (probable cause to search exists when reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene would lead persons of reasonable prudence to believe that an instrumentality of a crime or evidence pertaining to a crime will be found). Thus, it was reasonable for Officer White to search Schenk's purse because the purse was "a container one would reasonably believe to contain such evidence," of drug activity. *Huerta*, 2012 WL 280569, at *2; *Houghton*, 526 U.S. at 302.

In reaching this conclusion, we are not persuaded by Schenk's reliance on *Stokvis v. State*, 147 S.W.3d 669 (Tex. App.—Amarillo 2004, pet. ref'd) to invalidate the search of her purse. In that case, an officer stopped a truck for speeding, and the driver gave permission to

–12–

search the truck. *Id.* at 670. The defendant, who was the passenger, left her purse in the front seat. *Id.* The first officer did not discover anything during a search of the truck. *Id.* A second officer conducted his own search of the truck, which included opening the defendant's purse, and he found methamphetamine. *Id.* The court concluded the search of the defendant's purse was improper because she had a legitimate expectation of privacy in her purse and under the facts, the driver's consent to search his truck did not extend to her purse because the driver was a third party whom the State failed to show had a legitimate expectation of privacy in or authority to jointly use the purse. *Id.* at 672.

The glaring omission from the facts of *Stokvis* is the presence of drugs or other contraband found inside the vehicle providing probable cause to search other items inside the car. At the time the officer in *Stokvis* searched the defendant's purse, the officer had found nothing illegal inside the truck, which is a key distinction from the facts presently before us. Thus, Schenk's reliance on *Stokvis* is not persuasive.

Accordingly, Officer White conducted a legal search of Schenk's purse regardless of her consent. Her third issue is overruled.

**Findings of Fact and Conclusions of Law Under *State v. Cullen***

In her fourth issue, Schenk argues the trial court failed to enter findings of fact and conclusions of law as required under *State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). The State responds the trial court did not omit any dispositive findings necessary for resolution of the issues on appeal. We agree with the State.

In *Cullen*, the court held that "upon the request of the losing party on a motion to suppress evidence, the trial court shall state its essential findings." *Id.* at 698. "Essential findings" are those findings and conclusions adequate to provide an appellant court with a basis upon which to review the trial court's application of the law to the facts. *Id.* at 699. Findings are

-13-

inadequate when they are so incomplete an appellate court is unable to make a legal determination regarding a dispositive issue. *See State v. Saenz*, 411 S.W.3d 488, 495 (Tex. Crim. App. 2013).

At Schenk's request, the trial court entered fifty-seven findings of fact and conclusions of law justifying its decision to deny the motion to suppress. Although Schenk complains about forty-five of the findings and conclusions for various reasons such as not supported by the record, irrelevant, or incorrect legal conclusion, she never alleges the trial court failed to make any essential finding on a dispositive issue. Rather than complain about omitted findings, which could violate *Cullen*, she merely objects to those findings made. Therefore, because Schenk has not complained about any omitted findings that would be dispositive to her issues on appeal, the trial court's findings and conclusions do not violate *Cullen*. Schenk's fourth issue is overruled.

**Conclusion**

The judgment of the trial court is affirmed.


Do Not Publish
TEX. R. APP. P. 47
140207F.U05

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

-14-



# Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

STEPHANIE ANN SCHENK, Appellant

No. 05-14-00207-CR    V.

THE STATE OF TEXAS, Appellee

On Appeal from the 380th Judicial District Court, Collin County, Texas
Trial Court Cause No. 380-82013-2012.
Opinion delivered by Justice Bridges. Justices Lang-Miers and Myers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered March 16, 2015.

–15–

Order entered May 20, 2015



In The

## Court of Appeals
## Fifth District of Texas at Dallas

No. 05-14-00207-CR

STEPHANIE ANN SCHENK, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 380th Judicial District Court
Collin County, Texas
Trial Court Cause No. 380-82013-2012

## ORDER

Appellant Stephanie Ann Schenk's motion for rehearing filed on April 13, 2015 is

**DENIED**.

/s/    DAVID L. BRIDGES
        JUSTICE

**7/29/2015**                                                COA No. 05-14-00207-CR

**SCHENK, STEPHANIE ANN   Tr. Ct. No. 380-82013-2012**        **PD-0664-15**

On this day, the Appellant's petition for discretionary review has been refused.

Abel Acosta, Clerk

DISTRICT ATTORNEY  COLLIN COUNTY
GREG WILLIS
2100 BLOOMDALE RD STE 100
MCKINNEY, TX  75071
* DELIVERED VIA E-MAIL *

FILE COPY

OFFICIAL NOTICE FROM COURT OF CRIMINAL APPEALS OF TEXAS
P.O. BOX 12308, CAPITOL STATION, AUSTIN, TEXAS 78711

**7/29/2015**                                              **COA No. 05-14-00207-CR**
**SCHENK, STEPHANIE ANN    Tr. Ct. No. 380-82013-2012**         **PD-0664-15**
On this day, the Appellant's petition for discretionary review has been refused.

Abel Acosta, Clerk

JERRY D. KELLY
4131 N. CENTRAL EXPRESSWAY
SUITE 110
DALLAS, TX  75204
* DELIVERED VIA E-MAIL *

**7/29/2015**                                                    **COA No. 05-14-00207-CR**

**SCHENK, STEPHANIE ANN    Tr. Ct. No. 380-82013-2012         PD-0664-15**

On this day, the Appellant's petition for discretionary review has been refused.

Abel Acosta, Clerk

5TH COURT OF APPEALS  CLERK
LISA MATZ
600 COMMERCE, 2ND FLOOR
DALLAS, TX  75202
* DELIVERED VIA E-MAIL *

OFFICIAL NOTICE FROM COURT OF CRIMINAL APPEALS OF TEXAS FILE COPY
P.O. BOX 12308, CAPITOL STATION, AUSTIN, TEXAS 78711

**7/29/2015**                                                    **COA No. 05-14-00207-CR**
**SCHENK, STEPHANIE ANN    Tr. Ct. No. 380-82013-2012        PD-0664-15**
On this day, the Appellant's petition for discretionary review has been refused.

Abel Acosta, Clerk

LISA MCMINN
STATE PROSECUTING ATTORNEY
P.O. BOX 13046
AUSTIN, TX  78711
* DELIVERED VIA E-MAIL *